UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
PAMELA OLSEN, DEIRDRE KETCHAM,
and NOREEN CRIBBIN,

                      Plaintiffs,        MEMORANDUM
                                            OPINION AND ORDER
     -against-
                                            CV 05-3623 (ETB)

THE COUNTY OF NASSAU, DETECTIVE
LIEUTENANT VINCENT ROBUSTELLI,
SERGEANT STEVEN ZETH, SERGEANT
ROBERT ATCHISON, DETECTIVE KEN
CATALANI and DETECTIVE KEN SCHMITT,
(in their official and individual capacities),

                      Defendants.
-------------------------------------------------------------X

Before the Court is the plaintiffs' motion for attorney's fees and costs in the amount of $566,174.92.[1] Defendants oppose plaintiffs' application, asserting that the requested fees should be reduced on the grounds that: (1) the associate billing rates are unreasonable; (2) the plaintiffs achieved only "limited success;" and, (3) numerous billing entries are duplicative and contain block billing. For the following reasons, plaintiffs are awarded attorney's fees and costs in the amount of $517,434.95.

## FACTS

Familiarity with the facts of the underlying action is presumed. Plaintiffs, Pamela Olsen

---

[1] Plaintiffs' papers in support of the within motion request attorney's fees and costs in the amount of $587,989.92. However, that figure fails to take into account an agreed upon reduction by the parties of $21,815, discussed infra. After subtracting that reduction, the amount of attorney's fees and costs actually sought is $566,174.92.

("Olsen"), Deirdre Ketcham ("Ketcham"), and Noreen Cribbin ("Cribbin") (collectively referred to as "plaintiffs"), commenced this action in 2005, alleging that defendants, The County of Nassau (the "County"), Detective Lieutenant Vincent Robustelli ("Robustelli"), Sergeant Steven Zeth ("Zeth"), Sergeant Robert Atchison ("Atchison"), Detective Ken Catalani ("Catalani") and Detective Ken Schmitt ("Schmitt") (collectively "defendants"), impermissibly discriminated against them in the terms and conditions of their employment with the Nassau County Police Department ("NCPD") on the basis of their gender. Plaintiffs asserted their discrimination claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., 42 U.S.C. § 1983 ("Section 1983") and the New York State Human Rights Law, N.Y. Exec. Law §§ 290 et seq. Plaintiffs also asserted claims for First Amendment retaliation pursuant to Section 1983.

A jury trial was conducted in this action from October 6, 2008 to November 7, 2008. After all of the evidence was submitted, the Court granted judgment as a matter of law in favor of defendants, pursuant to Federal Rule of Civil Procedure 50(a), with respect to the following: (1) plaintiffs' New York State Human Rights Law claims; (2) plaintiffs' First Amendment retaliation claims; (3) the Section 1983 claims asserted against the individual defendants in their official capacities; and, (4) the Section 1983 claims asserted against defendants Catalani and Schmitt in their individual capacities. See Olsen v. County of Nassau, No. CV 05-3626, 2008 U.S. Dist. LEXIS 90426, at *20-21 (E.D.N.Y. Nov. 5, 2008). As a result of that decision, defendants Catalani and Schmitt were dismissed from the action entirely. See id. at *21.

The jury rendered its verdict on the remaining claims on November 14, 2008, finding in favor of plaintiffs with respect to the following: (1) all plaintiffs' Title VII claims against the

County for disparate treatment based on gender; (2) plaintiff Olsen's and plaintiff Ketcham's Title VII retaliation claims against the County; (3) plaintiff Olsen's and plaintiff Ketcham's Section 1983 claims for denial of equal protection against defendant Atchison; and, (4) all plaintiffs' Section 1983 claims against the County for denial of equal protection. The jury awarded plaintiffs $1 million in compensatory damages with respect to their claims against the County and $2 in nominal damages with regard to their claims against defendant Atchison.[2] The jury found that plaintiffs did not prevail on the following claims: (1) all plaintiffs' Title VII claims against the County for a hostile work environment based on sexual harassment; (2) plaintiff Cribbin's Title VII retaliation claim against the County; and, (3) all plaintiffs' Section 1983 claims against defendants Robustelli and Zeth for denial of equal protection.

Defendants thereafter moved for judgment as a matter of law, or alternatively, for a new trial, with respect to several of the jury's findings. That motion was denied and the verdict was upheld in its entirety by Memorandum Opinion and Order dated May 7, 2009. See Olsen v. County of Nassau, 615 F. Supp. 2d 35 (E.D.N.Y. 2009).

On October 9, 2009, the Court held a bench trial with respect to plaintiff Olsen's economic damages - i.e., front pay and back pay. The parties thereafter submitted a joint submission regarding the damages that should be awarded to Olsen, which was prepared by both of their experts. The Court approved the submission on November 19, 2009 and granted judgment in favor of Olsen in the amount of $432,747. The Court entered judgment with respect to the jury's November 14, 2008 verdict at that time as well.

---

[2] The individual compensatory damage awards were as follows: (1) $500,000 to Olsen; (2) $400,000 to Ketcham; and, (3) $100,000 to Cribbin.

Defendants appealed the November 19, 2009 judgment by Notice of Appeal dated December 17, 2009. Defendants' appeal is currently pending.

DISCUSSION

I.     The Presumptively Reasonable Fee

In the Second Circuit, attorney's fees are determined by calculating the "presumptively reasonable fee," or the "lodestar" figure. Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 493 F.3d 110, 117-18 (2d Cir. 2007), amended on other grounds, 522 F.3d 182 (2d Cir. 2008); Baruch v. Healthcare Receivable Mgmt., Inc., No. 05-CV-5392, 2007 U.S. Dist. LEXIS 80429, at *15 (E.D.N.Y. Oct. 29, 2007). The court determines the presumptively reasonable fee by multiplying "the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 453 (1983).

The burden is on the party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed. See id. at 433; Cho v. Koam Med. Servs. P.C., 524 F. Supp. 2d 202, 209 (E.D.N.Y. 2007) ("The party seeking the award bears 'the burden of documenting the hours reasonably spent by counsel . . . .'"). Accordingly, the party seeking an award of attorney's fees must support its application by providing contemporaneous time records that detail "for each attorney [and legal assistant], the date, the hours expended, and the nature of the work done." New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983). If the documentation is inadequate, the court may reduce the award accordingly. See Hensley, 461 U.S. at 433-34; Molefi v. The Oppenheimer Trust, No. 03 CV 5631, 2007 U.S. Dist. LEXIS 10554, at *16 (E.D.N.Y. Feb. 15, 2007) ("If such records are

inadequate the Court may reduce the award accordingly.") (quotation omitted).

A. Calculating the Reasonable Hourly Rate

In determining what constitutes a "reasonable hourly rate," the court should look to the market rates "'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'"[3] Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998) (quoting Blum v. Stevenson, 465 U.S. 886, 896 n.11 (1984)). The court "may also rely on its own knowledge of hourly rates charged in private firms to determine what is reasonable in the relevant community." Nike, Inc. v. Top Brand Co., No. 00 Civ. 8179, 2006 U.S. Dist. LEXIS 8381, at *4-5 (S.D.N.Y. Feb. 24, 2006) (citing Miele v. N.Y. State Teamsters Conf. Pens. & Retirement Fund, 831 F.2d 407, 409 (2d Cir. 1987)). In addition, the size and caliber of a firm may also be considered when determining a reasonable hourly rate, "primarily due to varying overhead costs." Cioffi v. New York Cmty. Bank, 465 F. Supp. 2d 202, 219 (E.D.N.Y. 2006) (citations omitted); see also Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1059 (2d Cir. 1989) (stating that "smaller firms may be subject to their own prevailing market rate"); Lukaszuk v. Sudeen, No. CV 02-5143, 2007 U.S. Dist. LEXIS 95919, at *35 (E.D.N.Y. Nov. 27, 2007) ("[C]ourts typically recognize that the size and caliber of a firm will influence the determination of appropriate billing rates.") (citing cases). Courts are required to award attorney's fees based on the attorney's current billing rate rather than a historical one. See Whitney v. Jet Blue Airways Corp., No. 07 Civ. 1397, 2009 U.S. Dist. LEXIS 118323, at *20 (E.D.N.Y. Oct. 30, 2009); see also LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 764 (2d Cir.

---

[3] The Second Circuit has defined the reasonable hourly rate as "the rate a paying client would be willing to pay." Arbor Hill, 493 F.3d at 117

1998) (stating that, when determining reasonable attorney's fees, "current rates, rather than historical rates, should be applied in order to compensate for the delay in payment").

For purposes of determining the reasonable hourly rate, "[t]he relevant community to which the court should look is the district in which the case was brought." Marisol A. v. Guiliani, 111 F. Supp. 2d 381, 386 (S.D.N.Y. 2000) (citing In re Agent Orange Prod. Liab. Litig., 818 F.2d 226, 232 (2d Cir. 1987); see also Arbor Hill, 493 F.3d at 118 (stating that the "community" for purposes of calculating attorney's fees "is the district where the district court sits") (citation omitted). The Second Circuit recently clarified this rule in Simmons v. New York City Transit Authority, 575 F.3d 170 (2d Cir. 2009), wherein it held that when determining an award of attorney's fees, there is "a presumption in favor of application of the forum rule," id. at 175, such that courts "should generally use 'the hourly rates employed in the district in which the reviewing court sits' in calculating the presumptively reasonable fee." Id. at 174 (quoting Arbor Hill, 493 F.3d at 119).

The determination of what constitutes a reasonable hourly rate also "requires the submission of information 'concerning the credentials or experience of counsel applying for fees.'" Molefi, 2007 U.S. Dist. LEXIS 10554, at *16 (quoting Night Hawk Ltd. v. Briarpatch Ltd., L.P., No. 03 Civ. 1382, 2003 U.S. Dist. LEXIS 23179, at *4 (S.D.N.Y. Dec. 23, 2003)). Where such information is lacking, the court may reduce the award of attorney's fees accordingly. See Molefi, 2007 U.S. Dist. LEXIS 10554, at *16 (citation omitted); see also Marano v. Aaboe, No. 05 Civ. 9375, 2007 U.S. Dist. LEXIS 80154, at *9 (S.D.N.Y. Oct. 29, 2007) (reducing plaintiff's counsel's requested hourly rate where counsel failed to "provide any details as to her skill, experience or reputation" in order to support the rate requested).

With respect to attorney's fees in general in this district, "[a] review of recent cases . . . indicates that the range of appropriate billing rates is $200 - $375 per hour for partners and $100 - $295 per hour for associates." Melnick v. Press, No. 06-CV-6686, 2009 U.S. Dist. LEXIS 77609, at *32 (E.D.N.Y. Aug. 28, 2009) (collecting cases); see also Gutman v. Klein, No. 03 Civ. 1570, 2009 U.S. Dist. LEXIS 123057, at *8 (E.D.N.Y. Oct. 9, 2009) (approving rates of $300 to $400 for partners, $200 to $300 for senior associates, and $100 to $200 for junior associates); Duverger v. C&C Duplicators, Inc., No. 08-CV-0721, 2009 U.S. Dist. LEXIS 53859, at *7 (E.D.N.Y. June 25, 2009) (finding appropriate billing rates in this district to be $200 to $350 for partners, $200 to $250 for senior associates, $100 to $150 for junior associates and $70 to $80 for legal assistants); Cruz v. Henry Modell & Co., No. CV 05-1450, 2008 U.S. Dist. LEXIS 25339, at *23 (E.D.N.Y. Mar. 31, 2008) ("Overall, hourly rates for attorneys approved in recent Eastern District of New York cases have ranged from $200 to $350 for partners, $200 to $250 for senior associates, $100 to $150 for junior associates, and $70 to $80 for legal assistants.").

Here, plaintiffs seek fees for the following attorneys who expended time on behalf of plaintiffs: (1) Rick Ostrove, a partner with fourteen years of experience in both civil rights and employment discrimination cases, whose billing rate is $375 per hour; (2) Leonard Leeds, a partner, whose billing rate is $400 per hour; (3) Jeff Brown, a partner, whose billing rate is $400 per hour; (4) Tom Ricotta, an associate with six years of experience in employment discrimination litigation, whose billing rate is $300 per hour; (5) Matthew Porges, an associate with five years of experience, primarily in employment discrimination litigation, whose billing rate is $300 per hour; (6) Becky Tung, an associate with seven years of experience, primarily in

employment discrimination litigation, whose billing rate is $300 per hour; (7) Matthew Marks, an associate, whose billing rate is $300 per hour; (8) Isaac Samuels, who is presumed to be an associate and whose billing rate is $150 per hour; (9) Vincent White, an associate whose admission is currently pending and whose billing rate is $125 per hour; (10) Trevor York, a legal assistant who worked for plaintiffs' counsel's firm for five years and whose billing rate is $125 per hour; (11) Madeleine Schwartz, a legal assistant who worked for plaintiffs' counsel's firm for three years and whose billing rate is $125 per hour; (12) Candace Baltzer, a legal assistant who worked for plaintiffs' counsel's firm for five years and whose billing rate is $125 per hour; (13) Ricardo Guerra, who, based on his billing rate of $125 per hour, is also a paralegal; and, (14) Susan Gallagher, who, based on her billing rate of $125 per hour, is a paralegal as well. (Ostrove Decl. ¶¶ 2, 30.) With the exception of Matthew Marks, Isaac Samuels and Vincent White, counsel for plaintiffs has provided the Court with the requisite background information for each of the attorneys who billed time in this action.[4] (Ostrove Decl. ¶¶ 6-31.) Counsel has similarly provided the Court with "guidance as to what rates attorneys of similar caliber charge in the current marketplace." Molefi, 2007 U.S. Dist. LEXIS 10554, at *18.

After reviewing the motion papers submitted, as well as the relevant case law, the Court finds that the hourly rates charged for partners Rick Ostrove, Leonard Leeds and Jeff Brown -

---

[4] Counsel also failed to provide background information for Leonard Leeds and Jeff Brown; however, the Court is aware that Mr. Leeds and Mr. Brown are two of the named partners of plaintiffs' counsel's firm and, presumably, have extensive experience. Moreover, a review of the billing records provided demonstrates that Mr. Leeds and Mr. Brown billed a minimal amount of time in this action and defendants do not challenge their hourly rates. Counsel similarly failed to provide background information for Ricardo Guerra and Susan Gallagher, who, based on their billing rates, appear to be paralegals. However, since Mr. Guerra and Ms. Gallagher appear to be paralegals and not attorneys, the Court will award the hours they billed.

$375 to $400 per hour - are fair and reasonable. However, the hourly rates charged for the associates and the legal assistants who expended time on this action are above the average hourly rates that have been considered to be appropriate by recent cases in this district. Plaintiffs seek to be awarded $300 per hour for all of the associates who worked on this action; however, each of them has a different range of experience. Specifically, while Mr. Ricotta and Ms. Tung have approximately six to seven years of experience in employment and labor litigation, Mr. Porges has less than five years of experience. Moreover, although plaintiffs request an hourly rate of $300 per hour for Mr. Marks and $150 per hour for Isaac Samuels, no background information whatsoever was provided to the Court to enable it to determine what level of experience Mr. Marks and Mr. Samuels possess. In addition, plaintiffs request an award of $125 per hour for each of the three legal assistants who billed time in this action. However, based on recent case law, the appropriate hourly rate for a legal assistant is $70 to $80 per hour. See Duverger, 2009 U.S. Dist. LEXIS 53859, at *7; Cruz, 2008 U.S. Dist. LEXIS 25339, at *23.

Accordingly, the Court awards the following hourly rates to the associates and legal assistants who worked on this action: (1) Tom Ricotta - $250 per hour;[5] (2) Matthew Porges - $175 per hour; (3) Becky Tung - $200 per hour; (4) Matthew Marks - $100 per hour;[6] (5) Isaac

---

[5] Although Mr. Ricotta is one year junior to Ms. Tung, the Court notes that he played a significant role in the preparation, trial and post-trial proceedings in this action and, for that reason, should be awarded a higher hourly rate.

[6] Because no background information was provided for Mr. Marks, his hours are being calculated at the rate of a junior associate.

Samuels - $100 per hour;[7] (6) Vincent White - $75 per hour;[8] (7) Trevor York - $75 per hour; (8) Madeleine Schwartz - $75 per hour; (9) Candace Baltzer - $75 per hour; (10) Ricardo Guerra - $75 per hour; and, (11) Susan Gallagher - $75 per hour.

B.   Number of Hours Reasonably Expended

In determining the hours reasonably expended, federal courts consider the following:

> (1) hours which reflect the inefficiency or duplication of services should be discounted; (2) hours that are excessive, unnecessary or which reflect "padding" should be disallowed; (3) legal work should be differentiated from nonlegal work such as investigation, clerical work, the compilation of facts and other types of work that can be accomplished by nonlawyers who command lesser rates; (4) time spent in court should be differentiated from time expended for out-of-court services; and (5) the hours claimed should be weighed against the court's own knowledge, experience and expertise as to the time required to complete similar activities.

McGrath v. Toys "R" Us, Inc., No. 01-3071, 2002 U.S. Dist. LEXIS 22610, at *8-9 (E.D.N.Y. Oct. 16, 2002). "The relevant issue . . . is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." Grant v. Bethlehem Steel Corp., 973 F.2d 96, 99 (2d Cir. 1992) (citation omitted). The court should, however, deduct any hours for work that was "excessive, redundant or otherwise unnecessary." Hensley, 461 U.S. at 434. Any deductions for

---

[7] Because no background information was provided for Mr. Samuels, his hours, like Mr. Marks, are being calculated at the rate of a junior associate.

[8] Since Mr. White has not yet been admitted to practice, the Court finds that his hourly rate is comparable to that of a law student, which is typically the same as a legal assistant. See Moon v. Kwon, No. 99 Civ. 11810, 2002 U.S. Dist. LEXIS 21775, at *10 (S.D.N.Y. Nov. 8, 2002) ("Students are generally billed at rates similar to those of paralegals.").

this reason may be accounted for in an across-the-board percentage.  See Luciano v. Olsten Corp., 109 F.3d 111, 117 (2d Cir. 1997) (citing In re Agent Orange, 818 F.2d at 237-38).

In the within action, defendants argue that the number of hours billed by plaintiffs' counsel should be reduced due to certain "questionable" billing practices, such as block billing and what defendants consider duplicative billing.  (Def. Mem. of Law 12-14.)  After thoroughly reviewing the billing entries, however, the Court finds that although plaintiffs' counsel did engage in block billing, the time entries are sufficiently detailed to allow the Court to determine whether the hours spent on a particular task - or set of tasks - were reasonable.  The Court finds that they were.  Accordingly, the Court finds that the across-the-board percentage reduction requested by defendants is unwarranted.

II.     Reductions Agreed to By Counsel

In his Reply Declaration in further support of the within motion, Mr. Ostrove states that the parties have reached an agreement with respect to certain of the hours challenged by defendants.  (Ostrove Reply Decl., ¶ 4.)  Specifically, plaintiffs concede that their counsel's travel time is only compensable at fifty percent (50%) of the attorney's hourly billing rate and agree to a reduction of those hours.  (Pl. Reply Mem. of Law 3.)  Moreover, with respect to Mr. Ricotta's travel time on May 28, 2009, due to a clerical error, he billed seven hours in travel time.  Plaintiffs' counsel agrees that those hours should be reduced to 1.5.  (Pl. Reply Mem. of Law 3.)

In addition, plaintiffs have agreed to withdraw their claim for hours spent on press conferences and other media relations.  (Pl. Reply Mem. of Law 4-5.)  The parties submit that

plaintiffs' counsel billed 10.75 hours[9] on such tasks. (Pl. Reply Mem. of Law 4-5; Napolitano Decl. ¶ 9.) Accordingly, these hours will be deducted from the requested award.

Plaintiffs have also agreed to deduct 1.41 hours of Mr. York's time, as it appears there may have been some inadvertent duplicative billing. (Pl. Reply Mem. of Law 8-9; Napolitano Decl. ¶ 8.) Accordingly, those hours will be deducted as well.

Finally, during a telephone conference held with the undersigned on January 21, 2010, counsel for the parties reached an agreement concerning the costs billed by two of the plaintiffs' treating psychologists, Jill Balk and Debra Mack, which amount to $1,820 and which defendants initially challenged as unrecoverable. As per the agreement reached by counsel, plaintiffs award will only include half of those billed fees, which amounts to $910.

III.     Defendants' Argument that Award Should be Reduced for "Limited Success"

Defendants also argue that the plaintiffs' fee award should be reduced because they only achieved "limited success" on their claims. (Def. Mem. of Law 10-12.) While plaintiffs were not successful on all of the claims asserted in their Third Amended Complaint, all prevailed on their Title VII claims for discrimination and Section 1983 equal protection claims against the County. Moreover, two of the three plaintiffs prevailed on their Title VII retaliation claims against the County, as well as their Section 1983 equal protection claims against Defendant Atchison. The jury awarded the plaintiffs a total of one million dollars ($1,000,000) on their meritorious claims. Accordingly, the Court finds that plaintiffs achieved more than just "limited

---

[9] The breakdown of press/media hours is as follows: (1) Rick Ostrove - 9.25 hours; (2) Leonard Leeds - 0.25 hours; (3) Matthew Porges - 0.25 hours; and, (4) Matthew Marks - 1.0 hour. (Pl. Reply Mem. of Law 4-5; Napolitano Decl. ¶ 9.)

success" and denies defendants' request that the fee award be reduced.

IV. Calculation of Attorney's Fees

Based on the foregoing, the Court awards attorney's fees as follows:

| Name | Position | Hours | Travel Time[10] | Court's Awarded Hourly Rate | Number of Hours Reasonably Expended Multiplied by Reasonable Hourly Rate |
|---|---|---|---|---|---|
| Rick Ostrove | Partner | 817.92[11] | 52.25 | $375/hour | $ 316,516.88 |
| Leonard Leeds | Partner | 2.50[12] | 0 | $400/hour | $ 1,000.00 |
| Jeff Brown | Partner | 4.00 | 0 | $400/hour | $ 1,600.00 |
| Thomas Ricotta | Associate | 454.59 | 37.50 | $250/hour | $ 118,335.00 |
| Matthew Porges | Associate | 131.40 | 1.25 | $175/hour | $ 23,104.38 |
| Becky Tung | Associate | 30.37 | 4.50 | $200/hour | $ 6,524.00 |
| Matthew Marks | Associate | 6.25[13] | 0 | $100/hour | $ 625.00 |

---

[10] As agreed by the parties, these hours are awarded at fifty percent (50%) of the attorney's hourly rate, as set by the Court.

[11] This represents the number of non-travel-related hours billed by Mr. Ostrove (827.17) minus the agreed upon reduction of 9.25 hours spent on press conferences and media relations.

[12] This represents the number of hours billed by Mr. Leeds (2.75) minus the agreed upon reduction of 0.25 hours spent on press conferences and media relations.

[13] This represents the number of hours billed by Mr. Marks (7.25) minus the agreed upon reduction of 1.00 hour spent on press conference and media relations.

-13-

| Name | Position | Hours | Travel Time | Court's Awarded Hourly Rate | Number of Hours Reasonably Expended Multiplied by Reasonable Hourly Rate |
|---|---|---|---|---|---|
| Isaac Samuels | Associate | 2.00 | 0 | $100/hour | $ 200.00 |
| Vincent White | Associate | 10.75 | 0 | $ 75/hour | $ 806.25 |
| Trevor York | Paralegal | 32.59[14] | 0 | $ 75/hour | $ 2,444.25 |
| Madeleine Schwartz | Paralegal | 6.00 | 0 | $ 75/hour | $ 450.00 |
| Candace Baltzer | Paralegal | 16.42 | 0 | $ 75/hour | $ 1,231.50 |
| Ricardo Guerrra | Paralegal | 4.92 | 0 | $ 75/hour | $ 369.00 |
| Susan Gallagher | Paralegal | 1.50 | 0 | $ 75/hour | $ 112.50 |

Based on the foregoing, the Court awards plaintiffs $473,318.76 in attorney's fees.

V.   Use of a Multiplier

Plaintiffs request an upward enhancement to their fee award to "send[] a message to similarly situated employers that discrimination and retaliation in the workplace is prohibited." (Pl. Mem. of Law 20.) Plaintiffs also base their request on the fact that their counsel was "willing to represent [them], through voluminous discovery, a six week trial, post trial motions, post trial discovery, and an additional trial on damages, despite ample risk." (Pl. Mem. of Law

---

[14]  This represents the number of hours billed by Mr. York (34) minus the agreed upon reduction of 1.41 hours for duplicative billing.

19.)

However, "it is well settled in the Second Circuit that enhancements of the lodestar amount of attorneys' fees are not permissible under fee-shifting statutes," such as 42 U.S.C. § 1988 (Section 1983's fees shifting provision) and 42 U.S.C. § 2000e-5(k) (Title VII's fee-shifting provision). Fink v. City of New York, 154 F. Supp. 2d 403, 414 (E.D.N.Y. 2001) (collecting cases) (quotation omitted). Moreover, the Supreme Court has "explicitly disallowed risk of loss . . . as the basis for upward enhancements of attorney fee awards." Id. (citing City of Burlington v. Dague, 505 U.S. 557, 566 (1992)). The Supreme Court has similarly held that factors such as 'the novelty [and] complexity of the issues,' 'the special skill and experience of counsel,' the 'quality of representation,' and the 'results obtained' from the litigation are presumably fully reflected in the lodestar amount, and cannot serve as independent bases for increasing the basic fee award." Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986) (quoting Blum, 465 U.S. at 898-900) (alteration in original). "Although upward adjustments of the lodestar figure are still permissible . . . such modifications are proper only in certain 'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts." Delaware Valley Citizens' Council, 478 U.S. at 565 (citing Blum, 465 U.S. at 898-901). The Court finds that this is not a case in which an enhancement is warranted. See Fink, 154 F. Supp. 2d at 415 (declining to award a multiplier in an ADA action).

Accordingly, plaintiffs' request for an upward enhancement is denied.

VI.     Expenses

"Attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." LeBlanc-Sternberg, 143 F.3d at 763 (quoting United States Football League v. Nat'l Football League, 887 F.2d 408, 416 (2d Cir. 1989)); see also Miltland Raleigh-Durham v. Meyers, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients.") (quoting Reichman v. Bonsignore, Brignati & Mazzotta, P.C., 818 F.2d 278, 283 (2d Cir. 1987)) (additional citation omitted). "However, expenses which are part of the attorney's ordinary overhead are not to be reimbursed." SEC v. Goren, 272 F. Supp. 2d 202, 214 (E.D.N.Y. 2003) (citing New York State Nat'l Org. for Women v. Terry, 737 F. Supp. 1350, 1363 (S.D.N.Y. 1990). The expenses claimed in this action are $45,026.19.

The expenditures incurred in the within action include costs for legal research, photocopies, overnight mail delivery, court reporters, transcripts, process servers, court imposed filing fees, expert fees and travel-related expenses, all of which are routinely recoverable. See, e.g., Rosco, Inc. v. Mirror Lite Co., No. CV 96-5658, 2009 U.S. Dist. LEXIS 99407, at *8-10 (E.D.N.Y. Oct. 26, 2009) (finding expert fees to be recoverable); Simmons v. New York City Transit Auth., No. CV 02-1575, 2008 U.S. Dist. LEXIS 16949, at *22-23 (E.D.N.Y. Mar. 4, 2008), vacated and remanded on other grounds, 575 F.3d 170 (2d Cir. 2009) (finding costs relating to "filing fees, process servers, postage, travel and photocopying" to be recoverable); Cho, 524 F. Supp. 2d at 212 (reimbursing plaintiff for costs related to "Federal Express, reproduction, telephone, facsimile, postage, deposition services, [and] deposition/hearing

transcripts" as well as legal research); Reiter v. Metro. Transp. Auth. of N.Y., No. 01 Civ. 2762, 2007 U.S. Dist. LEXIS 71008, at *7 (S.D.N.Y. Sept. 25, 2007) (stating that a "prevailing party in an action under Title VII may recover, in the court's discretion, . . . expert fees as part of the costs"); Int'l Consulting Servs., Ltd. v. Cheap Tickets, Inc., No. 01-CV-4768, 2007 U.S. Dist. LEXIS 71689, at *26 (E.D.N.Y. Sept. 12, 2007) (finding costs related to electronic research reasonable and awarding costs requested); In re Merrill Lynch & Co. Research Reports Secs. Litig., No. 02 MDL 1484, 2007 U.S. Dist. LEXIS 9450, at *79 (S.D.N.Y. Jan. 31, 2007) (finding expenses for transportation to be reasonable and recoverable); Molefi, 2007 U.S. Dist. LEXIS 10554, at *25 (finding that "costs associated with mailings, photocopies, and court fees . . . are precisely the type of costs that may be included in an award of attorney's fees").

With respect to the fees associated with plaintiffs' treating psychologists, although plaintiffs initially sought to be reimbursed for the full amount incurred - $1,820 - as stated supra, counsel for the parties agreed to reduce that amount by fifty percent (50%) during the telephone conference with the Court held on January 21, 2010. Taking into account that agreed upon reduction, such fees amount to $910.

Accordingly, plaintiffs are awarded costs in the amount of $44,116.19.

CONCLUSION

For the foregoing reasons, plaintiffs are awarded attorney's fees in the amount of $473,318.76 and costs in the amount of $44,116.19, for a total monetary award of $517,434.95.

**SO ORDERED:**

Dated:  Central Islip, New York
        January 26, 2010

                                        /s/ E. Thomas Boyle
                                        E. THOMAS BOYLE
                                        United States Magistrate Judge